UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>　　v.<br>APPROXIMATELY 110607.71 TETHER (USDT),<br>　　　　Defendant. | Case No. 23-cv-05838-KAW<br><br>**ORDER RE DEFAULT JUDGMENT**<br>Re: Dkt. No. 17 |

In this *in rem* forfeiture action, Plaintiff United States ("Government") moves for default judgment against Defendant, Approximately 110607.71 Tether (USDT) ("Defendant Property"), formerly held in a Binance account (the "Subject Account") associated with a deposit address 0xdddb12c230a3c51c0d17e50ec2abf7474a3f500b, pursuant to Federal Rule of Civil Procedure 55(b). (Mot., Dkt. No. 17.) The Government's motion follows an entry of default by the Clerk on September 20, 2024. To date, no formal claims or answers have been filed in this action.

On November 7, 2024, the Court held a hearing at which no potential claimant appeared to challenge the Government's forfeiture. For the reasons set forth below, the Court GRANTS the motion for default judgment.

## I. BACKGROUND AND PROCEDURAL HISTORY

On November 13, 2023, the Government filed a Verified Complaint for Civil Forfeiture *in rem*, seeking forfeiture of the Defendant Property. (Compl., Dkt. No. 1 ¶¶ 1, 7.) As detailed in the complaint, this case concerns the seizure of approximately 11057.22[1] Tether, which was seized

---

[1] While this case was brought against "Approximately 10607.71 Tether (USDT)," the Government seized 11057.22 USDT. (Mot. at 3 n.1.) The Government believes this discrepancy is the result of a typographical error in the complaint. (*Id.*)

from a cryptocurrency account used to launder fraud proceeds.  (Compl. ¶ 8; Mot. at 3.)

The victim, identified as "RB," connected with an individual identifying themselves as "Janey Lee" over text message.  (Compl. ¶ 9.)  Although Lee initially claimed to have the wrong number, her conversation with RB continued.  (Compl. ¶ 10.)  RB and Lee discussed personal information, and their relationship became romantic.  (Compl. ¶ 11.)  During their conversations, Lee claimed she had become successful as a cryptocurrency trader, sending RB screenshots of her purported earnings and offering to help RB invest in cryptocurrency.  (Compl. ¶ 12.)

In March 2023, Lee introduced RB to an alleged cryptocurrency trading platform, "XTRA."  (Compl. ¶ 13.)  Lee directed RB to create an XTRA account, and instructed him to purchase various cryptocurrency.  (Compl. ¶¶ 13, 15.)  Following his initial investment, RB was able to view his "earnings" of 20-30% against his initial investment; these earnings, however, were fictitious.  (Compl. ¶ 16.)  These fictitious earnings and Lee's continued encouragement were enough to convince RB to invest $260,000 in cryptocurrency on the XTRA platform between March and April 2023.  (Compl. ¶ 17.)  When RB tried to make a withdrawal from his account, XTRA claimed he needed to verify his account by sending his XTRA account an additional amount worth approximately 20% of his account balance.  (Compl. ¶ 19.)  RB then filed a complaint with the Federal Bureau of Investigation.  (Compl. ¶ 20.)

An April 21, 2023 deposit by RB ultimately passed through a series of transfers between cryptocurrency addresses, ultimately arriving at the Subject Account.  (Compl. ¶ 21.)  RB's funds were then swapped to USDT.  (Compl. ¶ 22.)  Swaps of this nature are often conducted with no legitimate business purpose, but to launder a victim's funds.  (Compl. ¶ 22.)  Binance records show that between September 16, 2022 and May 23, 2023, the Subject Account received nearly $18 million in cryptocurrency deposits.  (Compl. ¶ 25.)  At no point in the Subject Account's history did the accountholder deposit or withdraw fiat currency, which is how users typically acquire cryptocurrency.  (Compl. ¶ 25.)

Ultimately, law enforcement has identified three other victims collectively reporting losses of approximately $550,000 from the XTRA scam.  (Compl. ¶ 26.)  Victims of other scams have had their funds laundered through addresses connected to the Subject Account.  (Compl. ¶¶ 27,

1   32.)  Accordingly, the Government seized the contents of the Subject Account pursuant to a

2   seizure warrant issued on May 31, 2023.  (Mot. at 6.)

3         On November 13, 2023, the Government filed this action to obtain the forfeiture of

4   Defendant Property, alleging it constitutes or is derived from proceeds obtained, directly or

5   indirectly, from violations of 18 U.S.C. §§ 1343, and 1956.  (Compl. ¶ 2.)

6         On December 1, 2023, the Clerk of the Court for the Northern District of California issued

7   a warrant to arrest the Defendant Property, which is in the Government's custody.  (Dkt. No. 7.)

8   After the Government filed the Verified Complaint, it published notice of the action on the official

9   government internet site (www.forfeiture.gov) for 30 consecutive days, beginning November 16,

10  2023.  (Dkt. No. 9.)  The Government also served notice of the action upon the only known

11  potential claimant ("Potential Claimant") by electronic mail.  (Dkt. No. 8.)

12        After no claims were filed, the Government filed a motion for entry of default on

13  September 16, 2024.  (Dkt. No. 13.)  The Government included an e-mail chain with the Potential

14  Claimant, who initially expressed interest in filing a claim.  (Phillips Decl., Exh. A, Dkt. No. 13-

15  1.)  After the Government provided information on how to contest the forfeiture, the Potential

16  Claimant responded, "can I f[***] you are mother" and "hello come to Myanmar i f[***] you are

17  mother."  (*Id.*)  On September 20, 2024, default was entered.  (Dkt. No. 14.)

18        On September 27, 2024, the Government filed the instant motion for default judgment.  To

19  date, no claims have been filed in this action and the Government's motion for default judgment

20  remains unopposed.

21                **II.   LEGAL STANDARD**

22      **A.   Civil Forfeiture**

23        The Government filed this action under 18 U.S.C. § 981(a)(1)(A),(C) and (D), which

24  provide that property "subject to forfeiture" includes "[a]ny property, real or personal, involved in

25  a transaction or attempted transaction in violation of section 1956," which addresses money

26  laundering; "[a]ny property, real or personal, which constitutes or is derived from proceeds

27  traceable to a violation of section … 1030," dealing with computer hacking; and "[a]ny property,

28  real or personal, which represents or is traceable to the gross receipts obtained, directly or

*(Left margin: United States District Court / Northern District of California)*

indirectly, from a violation of … section 1343 (relating to wire fraud)." Forfeiture is "harsh and oppressive" and thus, is "not favored by the courts." *See U.S. v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1069 (9th Cir. 1994). The Ninth Circuit is "particularly wary of civil forfeiture statutes" because they "impose 'quasi-criminal' penalties" but do not provide property owners with the degree of procedural protections provided to criminal defendants. *See id.* at 1068; *U.S. v. Marlof*, 173 F.3d 1213, 1217 (9th Cir. 1999) (quoting *$191,000.00 in U.S. Currency*, 16 F.3d at 1068). Accordingly, strict adherence to procedural rules is paramount in civil forfeiture proceedings. *See Marlof*, 173 F.3d at 1217 (denying forfeiture where government "erred" by failing to provide due notice to property owner); *see also $191,000.00 in U.S. Currency*, 16 F.3d at 1068-69 (strictly construing currency forfeiture provisions of 19 U.S.C. § 615 against government and holding that "the burden on the government to adhere to procedural rules should be heavier than on claimants").

### B. Default Judgment

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Id.* at 999 (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the Eitel factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true."

4

*Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

### III.   DISCUSSION

#### A.   Magistrate Judge Jurisdiction to Enter Default Judgment

Section 636(c) confers magistrate judges the authority to enter judgment in a civil action "upon consent of the parties." Generally, the consent of all the parties, including unserved defendants, is required for a valid judgment to be entered. *Williams v. King*, 875 F.3d 500, 504 (9th Cir. 2017). Here, however, the action is *in rem* against cryptocurrency. In *in rem* forfeiture proceedings, the Ninth Circuit has held that a putative claimant's failure to comply with the applicable filing requirements precludes standing as a party to the action, such that the property owner's consent to magistrate judge jurisdiction is not a prerequisite to the entry of default judgment against his interest in the subject property. *United States v. Real Property*, 135 F.3d 1312, 1316-17 (9th Cir. 1998). In *Williams*, the Ninth Circuit affirmed this narrow exception, such that the undersigned is vested with jurisdiction to enter judgment against currency even absent the consent of the property owner. *See* 875 F.3d at 504. Accordingly, since the undersigned has obtained consent from the only party to the action – Plaintiff – the Court may enter default judgment. (*See* Dkt. No. 5.)

#### B.   Jurisdiction and Service of Process

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

##### i.   Subject Matter Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1345, 1355 and 18 U.S.C. § 981 because the Defendant Property constitutes or is derived from proceeds obtained, directly or

1  indirectly, from violations of 18 U.S.C. §§ 1343 and 1956.  *See* 28 U.S.C. § 1345 ("Except as
2  otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all
3  civil actions, suits or proceedings commenced by the United States, or by any agency or officer
4  thereof expressly authorized to sue by Act of Congress."); 28 U.S.C. § 1355 ("The district courts
5  shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding
6  for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred
7  under any Act of Congress[.]"); *see also United States v. $6,190.00 in U.S. Currency*, 581 F.3d
8  881, 884 (9th Cir. 2009) (discussing district court's subject matter jurisdiction in civil forfeiture
9  proceeding brought pursuant to 18 U.S.C. § 981).

### ii. Venue

Venue is proper in the Northern District of California under 28 U.S.C. § 1355(b)(1), which provides that a forfeiture action may be brought in "the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred."  Because the complaint alleges that the Defendant Property was stolen from Victim RB, who is a resident of Santa Clara, California, at least some portion of the acts or omissions giving rise to the forfeiture occurred in this District. (Compl. ¶ 9.)  And because this is an *in rem* proceeding over the Defendant Property rather than a person, the fact that events giving rise to the forfeiture occurred in this District also gives the Court jurisdiction over the Defendant Property.  *United States v. Obaid*, 971 F.3d 1095, 1102 (9th Cir. 2020) (citing 28 U.S.C. § 1355(b) to support that the court had jurisdiction over the disputed shares even if they were "located in a foreign country").

### iii. Service of Process

The Supplemental Rules govern civil forfeiture actions *in rem* arising from a federal statute. *See* Supplemental Rule A(1)(B). Supplemental Rule G(4) governs the process by which the government must serve notice of a forfeiture complaint. Notice is required to the public via publication, as well as to potential claimants via direct notice.  The Court has personal jurisdiction over Defendant Property, because the Government adhered to the applicable notice requirements after this action in rem was filed.  *See* discussion, *infra,* Part III.D.ii.

### C. Analysis of the *Eitel* Factors

Since the Court has confirmed jurisdiction in this matter, the Court must turn to the *Eitel* factors to determine whether the entering of a default judgment is appropriate.

#### i. Prejudice

Federal courts have jurisdiction over civil forfeiture claims for monies obtained through computer fraud, wire fraud, and money laundering. 18 U.S.C. §§ 981(a), 1030, 1343, 1956. A federal civil forfeiture action is the only means for the Government to retain Defendant Property, so the Government would be prejudiced if the Court did not enter default judgment. *See* 18 U.S.C. § 981(b)(2)(A).

#### ii. Merits of Plaintiff's Claims & Sufficiency of the Complaint

The second and third *Eitel* factors focus on the merits of Plaintiffs' substantive claim and the sufficiency of the Complaint. *Eitel*, 782 F.2d at 1471–72. The Ninth Circuit suggests that these factors require that a plaintiff state a claim for relief on which it may recover. *Kloepping v. Fireman's Fund.*, No. C 94-2684 THE, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

The Government brings its claims pursuant to 18 U.S.C. § 981, under which property linked to violations of 18 U.S.C. §§ 1343 and 1956 are subject to forfeiture. Section 1343 prohibits transmitting "by means of wire, radio, or television communications in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing" a scheme to defraud. Section 1956(a)(1)(B)(i) prohibits conducting financial transactions with funds known to be the proceeds of unlawful activity for the purpose of concealing or disguising the proceeds.

Here, the complaint alleges that proceeds from various scams -- including RB's investment of approximately $260,000 into a fake XTRA platform -- were transferred into the Subject Account. (*See* Compl. ¶¶ 9-32.) When RB's funds traveled to the Subject Account, they were swapped to USDT; these types of swaps are often conducted with no legitimate business purpose, but to launder victim funds by obfuscating the nature, source, ownership, control, and/or source of the funds. (Compl. ¶ 22.) Further, although nearly $18 million in cryptocurrency has been

1    deposited in the Subject Account, the accountholder never deposited or withdrew fiat money from
2    the account even though this is usually how users acquire cryptocurrency.  (Compl. ¶¶ 8, 25.)
3    These factors demonstrate that the bad actors involved possessed the Defendant Property as either
4    proceeds of wire fraud, or as property involved in money laundering.

Thus, there are sufficient facts alleged to show that the Defendant Property is subject to forfeiture.

### iii. Sum of Money at Stake

The fourth *Eitel* factor focuses on the amount at issue in the action, as courts should be hesitant to enter default judgments in matters involving large sums of money. "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trs. v. Core Concrete Const., Inc.*, No. C 11-2532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at 1472). However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.* (citations omitted).

Here, the Government represents that the Defendant Property is 110572.22378892 USDT, which is valued at approximately $110,572.22 at the time of the filing of this motion.  (Mot. at 9.) While this amount is substantial, it is not so large as to warrant the denial of the motion.

### iv. The Possibility of a Dispute Concerning Material Facts

With respect to the fifth factor, no potential claimants have participated in this action nor has there been any attempt to contest the Government's material facts or legal assertions. Furthermore, there have been no attempts to set aside the entry of default despite the Potential Claimant being served with the motion.

Indeed, the Potential Claimant was given ample opportunity to respond to the complaint and participate in the proceedings.  The Government properly effected service of process and served them with the pending motion for default judgment.  Additionally, when the Potential Claimant indicated he wanted to contest the forfeiture, the Government provided information on how to do so, including providing advice on how to find an attorney or how to proceed pro se. (Phillips Decl., Exh. A.)  Rather than contest the forfeiture, the Potential Claimant asked if he

8

could "f[***] you are mother." (*Id.*)  Thus, this factor weighs in favor of default judgment.

>  v.  **Whether Default was a Result of Excusable Neglect**

The Government properly served the known Potential Claimant with the summons and the complaint, but no claim was ever filed in court, and there was no response to the motion for default judgment.  Further, given that the Potential Claimant responded to the Government's electronic communications, the Court finds that the Potential Claimant received actual notice of this case, but chose not to file a claim or otherwise participate in this litigation is due to excusable neglect.

>  vi.  **Federal Rules Preference for a Decision on the Merits**

After an examination of these facts in the aggregate, this Court finds that *Eitel* factors one through six outweigh the Federal Rules of Civil Procedure's preference for a decision on the merits.  Thus, so long as the Government adhered to the procedural rules concerning civil forfeiture, default judgment is warranted.

### D.  Procedural Compliance with Civil Forfeiture Rules

Pursuant to 18 U.S.C. § 981(b)(2)(A), to seize property subject to forfeiture, the Government must file a complaint for forfeiture in the United States district court and have an arrest warrant *in rem* issued by the court pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims.

>  i.  **Adequacy of the Complaint**

The Government shall initiate civil forfeiture proceedings by filing a verified complaint for forfeiture, which states the grounds for jurisdiction and venue, describes the property being forfeited with reasonable particularity, identifies the statute under which the forfeiture action is brought, and includes sufficient factual detail to support a reasonable belief that the Government will be able to meet its burden of proof at trial. Fed. R. Civ. P. Supp Admir. Mar. Cl.  G(2)(a)–(f) ("Supp G").

Here, the Government filed a verified complaint for forfeiture in accordance with § 981(b)(2)(A).  The complaint set forth sufficient facts as to the grounds for jurisdiction and venue, a description of Defendant Property, and the federal statutes under which the forfeiture action was

9

1 brought. (Compl. ¶¶ 1-7.) Finally, the facts alleged support a reasonable belief that the
2 Government will meet its burden of proof at trial. *See supra* Part III.C.ii. Thus, the complaint is
3 adequate.

      **ii.**   **Adequacy of Notice and Arrest of Property**

5   The Admiralty Local Rules of this district govern *in rem* forfeiture actions. *See* Admir.
6 L.R. 1-2. A party seeking default judgment must show that due notice of the action and arrest of
7 the property has been given. Admir. L.R. 6-1(a). Since this forfeiture action arises under federal
8 statute, the notice and arrest requirements must be in accordance with Supp G(3)-(4). Admir. L.R.
9 6-1(a)(1).

      a.   Arrest

11   If the defendant is not real property, "the clerk must issue a warrant to arrest the property if
12 it is in the government's possession, custody, or control." Supp G(3)(b)(i). Here, because the
13 Government represented that Defendant Property was within its possession, custody, or control,
14 the Clerk properly issued a warrant on December 1, 2023, and the Government served a copy of
15 the warrant on the potential claimants. (Dkt. Nos. 7, 8.) Thus, the Government complied with the
16 arrest requirement.

      b.   Notice

18  Rule G(4) requires the Government to provide both general notice to the public and direct
19 notice of the forfeiture action to any known person who reasonably appears to be a potential
20 claimant, so that the person has an opportunity to file a timely claim and defend the forfeiture
21 action as a party to the litigation. Supp. G(4). The public notice requirement may be met by
22 publishing the notice on an official government forfeiture website for at least thirty consecutive
23 days. Supp. G(4)(a)(iv)(C), (4)(b)(i). That notice must state the time to file a claim and answer.
24 Supp. G(4)(a)(ii)(B).

25   In complying with Rule G's notice contents requirement to both the public and potential
26 claimants, the Government's notice contained a description of Defendant Property and the
27 applicable deadlines to submit verified claims — specifically, any person or entity having an
28 interest in Defendant Property was required to file a verified claim or statement no later than 35

1  days after service of the complaint or within 60 days of the first date of publication of notice. (*See*
2  Dkt. No. 9 at 2.)  The published notice was posted online from November 16, 2023 through
3  December 15, 2023, which was thirty consecutive days. (Dkt. No. 9 at 3.)  The 60th day after
4  November 16, 2023 (the first date of publication) was January 15, 2024.

5  In addition, Rule G(4)(b)(iii)(A) requires that "notice must be sent by means reasonably
6  calculated to reach the potential claimant."  Such notice may be sent to the potential claimant or to
7  that person's attorney. Fed. R. Civ. P. Suppl. G(4)(b)(iii)(B). An individual who receives direct
8  notice of a forfeiture action must file a claim with the Court within 35 days after receiving notice
9  of the action. Fed. R. Civ. P. Supp. G(4)(b)(ii)(B), G(5)(a)(ii)(A).  Here, on December 4, 2023, the
10 Government served notice of the action on the Potential Claimant by electronic mail.  (Dkt. No.
11 6.)  Courts have acknowledged that sending notice via electronic mail is "an appropriate form of
12 notice" when a case involves "international defendants whose locations are hard to pin down and
13 the nature of the crimes necessarily entails some degree of cyber-proficiency."  *United States v.*
14 *Twenty-Four Cryptocurrency Accounts*, 473 F. Supp. 3d 1, 6 (D.D.C. 2020).  Moreover, the
15 Potential Claimant actually received notice, as he responded to the Government's service of the
16 relevant documents.  (Phillips Decl., Exh. A.)  Because direct notice was sent to the Potential
17 Claimant, pursuant to G(5)(a)(ii)(A), any claim was due 35 days later on January 8, 2024.

18 Lastly, Admir. L.R. 6-2(a) requires that the Government show that no one has filed a
19 timely and responsive pleading pursuant to Rule G(5). Admir. L.R. 6-2(a).  As of September 27,
20 2024, no claims have been filed, and nobody has sought to set aside the default or raised a claim of
21 excusable neglect.  (Mot. at 7).  At the hearing, the Government confirmed that, to date, no claims
22 have been filed.

23 Thus, the Government has complied with the arrest and notice procedures required to
24 obtain a default judgment against *in rem* Defendant Property.
25 ///
26 ///
27 ///
28 ///

**IV.   CONCLUSION**

In light of the foregoing, the Court GRANTS the Government's motion for default judgment against Defendant Approximately 110607.71 USDT.

IT IS SO ORDERED.

Dated: November 13, 2024

_____
KANDIS A. WESTMORE
United States Magistrate Judge